UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN A. STOCKS,

    Petitioner,

v.                                            Case No. 18-11768

NOAH NAGY,                       HON. AVERN COHN

    Respondent.
_____/

# MEMORANDUM AND ORDER
# DENYING PETITION FOR A WRIT OF HABEAS CORPUS
# AND
# DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

## I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Stephen A. Stocks, proceeding pro se, challenges his sentence of fifteen to thirty years for one count of unarmed robbery, M.C.L. § 750.530. Petitioner contends that the trial court relied on inaccurate information and engaged in judicial fact-finding at his sentencing and that his trial attorney was ineffective for failing to object to the scoring of two offense variables. Respondent contends that the petition should be denied because the scoring of state sentencing guidelines is a non-cognizable question of state law and because Petitioner was not prejudiced by any constitutional error. For the reasons that follow, the petition will be denied.

## II. Background

The charge against Petitioner arose from an incident in St. Clair County, Michigan on August 25, 2013. Petitioner approached a 91-year-old woman in the

parking lot of a supermarket and grabbed the woman's purse.  In the process, both Petitioner and the victim fell down. The victim broke her hip; Petitioner was able to jump up and run away.  The police were called and one of Petitioner's acquaintances identified Petitioner as the suspect.  Petitioner was arrested the next day and acknowledged his guilt to the police in a written statement.

On November 12, 2013, Petitioner pleaded guilty as charged to unarmed robbery.  There was no plea agreement.  The trial court sentenced Petitioner as a fourth habitual offender to a term of fifteen to thirty years in prison.

Petitioner subsequently filed a motion to correct an invalid sentence and for re-sentencing on the basis that offense variables 10 and 13 of the state sentencing guidelines were improperly scored.  The prosecutor conceded that offense variable 13 was improperly scored, and, following an evidentiary hearing, the trial court ruled that it had properly scored 10 points for offense variable 10.

Petitioner then challenged his sentence in an application for leave to appeal in the Michigan Court of Appeals.  He argued there, as he does here, that:  (1) he was sentenced on the basis of inaccurate information in violation of his constitutional right to due process, and his trial attorney was ineffective for failing to object to the scoring of offense variables 10 and 13; and (2) his constitutional rights were violated by judicial fact-finding, which increased the floor of the permissible sentence, in violation of <u>Alleyne v. United States</u>, 570 U.S. 99  (2013).  The Michigan Court of Appeals denied leave to appeal for lack of merit.  <u>See</u> <u>People v. Stocks</u>, No. 324513 (Mich. Ct. App. Dec. 15, 2014) (unpublished).

2

Petitioner raised the same claims in the Michigan Supreme Court, which initially held his case in abeyance, pending a decision in the case of People v. Lockridge, Docket No. 149073. See People v. Stocks, 863 N.W.2d 74 (Mich. 2015). On July 29, 2015, the Michigan Supreme Court issued its decision in Lockridge. It held that Michigan's sentencing guidelines violate a defendant's Sixth Amendment right to a jury trial to the extent the guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that mandatorily increase the floor of the guidelines minimum sentence range. See People v. Lockridge, 870 N.W.2d 502, 506 (2015).

The Michigan Supreme Court then reconsidered Petitioner's application for leave to appeal and, in lieu of granting leave to appeal, it remanded Petitioner's case to the trial court for a determination of whether the trial court would have imposed a materially different sentence under the sentencing procedure described in Lockridge. The Supreme Court denied leave to appeal in all other respects because it was not persuaded to review the remaining issue. See People v. Stocks, 870 N.W.2d 720 (Mich. 2015).

On remand, the trial court issued an order which stated that, after reviewing Petitioner's post-remand motion for re-sentencing, and after considering the totality of the facts and circumstances in the case, the court had determined that it would not have imposed a materially different sentence but for the Lockridge error. Consequently, the court denied Petitioner's motion for re-sentencing. See People v. Stocks, No. 13-002432-FH (St. Clair Cty. Cir. Ct. Apr. 21, 2016).

Petitioner appealed the trial court's decision on the basis that his Sixth and Fourteenth Amendment rights were violated by judicial fact-finding that increased the floor of the permissible sentence in violation of Alleyne. The Michigan Court of Appeals denied leave to appeal for lack of merit. See People v. Stocks, No. 335352 (Mich. Ct. App. Dec. 1, 2016). On May 31, 2017, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. See People v. Stocks, 895 N.W.2d 178 (Mich. 2017). On October 3, 2017, the Michigan Supreme Court denied Petitioner's motion for reconsideration. See People v. Stocks, 901 N.W.2d 598 (Mich. 2017).

Petitioner then filed the instant petition. He raises the following claims, which have been presented to the Michigan Court of Appeals and to the Michigan Supreme:

I. Petitioner was sentenced on the basis of inaccurate information in violation of his Fifth Amendment right to due process where offense variables 3, 10 and 13 were incorrectly scored and trial counsel was ineffective for failing to object to the scoring of offense variables 10 and 13.

II. Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated by judicial fact finding which increased the floor of the permissible sentence in violation of Alleyne v. United States, 133 S. Ct. 2151 (2013), as defined in Michigan by People v. Lockridge, 498 Mich. 358 (2015).

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), as codified at 28 U.S.C. § 2254(d), provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly,

> [w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for

ordinary error correction through appeal." Harrington, supra, at 102–103, 131 S.Ct. 770 (internal quotation marks omitted).

Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

In simple terms, the Supreme Court has said that the standard of review is "difficult to meet" and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Harrington, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). The Supreme Court has further said that a federal court must guard against "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010).

Finally, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. Analysis

#### A. Offense Variables 3, 10, and 13; Counsel's Failure to Object

In his first claim, Petitioner says that the trial court incorrectly scored offense variables 3, 10, and 13 and violated his constitutional right to due process by relying on

inaccurate information at his sentencing.  Petitioner further alleges that his trial attorney was ineffective for failing to object to the scoring of offense variables 10 and 13.

Petitioner's contention that the trial court failed to comply with state law and incorrectly scored the Michigan sentencing guidelines is not a proper habeas claim.  A state court's application and interpretation of state sentencing guidelines is "a matter of state concern only," Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  Therefore, the only question is whether the trial court violated Petitioner's constitutional right to due process when scoring offense variables 3, 10, and 13, and whether trial counsel was ineffective for failing to object to the scoring of offense variables 10 and 13.

A sentence violates due process of law if the trial court relied on extensively and materially false information that the defendant had no opportunity to correct through counsel.  Townsend v. Burke, 334 U.S. 736, 741 (1948).  To obtain relief, Petitioner must show that his sentence was "founded at least in part upon misinformation of constitutional magnitude." United States v. Tucker, 404 U.S. 443, 447 (1972).

To prevail on his ineffectiveness claim, Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).  Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and "that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "The standards created by Strickland and §

2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington, 562 U.S. at 105 (internal and end citations omitted).

### 1. Offense Variable 3

Petitioner received a score of 25 points for offense variable 3, which is "physical injury to a victim." Mich. Comp. Laws § 777.33(1). Twenty-five points is an appropriate score if a "[l]ife threatening or permanent incapacitating injury occurred to a victim." M.C.L. § 777.33(1)(c). Ten points is the proper score if "[b]odily injury requiring medical treatment occurred to a victim." Mich. Comp. Laws § 777.33(1)(d).

Petitioner concedes that the victim broke her hip during the crime and that the injury required medical treatment. Therefore, he maintains that he should have received 10 points for offense variable 3 and that a score of 25 points was improper because there is no evidence in the record that the victim suffered from a permanent incapacitating injury.

The victim's granddaughter, however, apparently stated in a victim's impact statement that, prior to the robbery, the victim lived independently, drove a car, and did charitable work. The granddaughter also stated that the robbery and resulting injury deprived her grandmother of her independence. See Brief in Support of Pet. for Writ of Habeas Corpus, at 6; see also 10/23/14 Evidentiary Hr'g Tr. at 6. The victim herself reported that, after the incident, she was dependent on a walker to help her get where she wanted to go. See Brief in Support of Pet. for Writ of Habeas Corpus at 6-7.

The trial court concluded at Petitioner's sentencing that the victim's injury was permanent because the victim was probably beyond the age where hip--replacement

8

surgery was a feasible medical option, and, therefore, she would have to deal with her injury for the rest of her life.  The trial court stated that the injury was incapacitating because the victim needed a walker, could not live on her own, could not drive anymore, and had lost her independence.  12/16/13 Sentence Tr. at 8-9.

The trial court did not rely on materially false information when it concluded that the victim suffered from a permanent and incapacitating injury.   Therefore, Petitioner's right to due process was not violated by a score of 25 points for offense variable 3.

### 2.  Offense Variable 10

Petitioner received ten points for offense variable 10, which is "exploitation of a vulnerable victim."  M.C.L. § 777.40(1).  A score of 10 points is appropriate if the offender exploited a victim's "agedness."  M.C.L. § 77.40(1)(b).   A score of zero is proper if the offender did not exploit a victim's vulnerability. M.C.L. § 777.40(1)(d). Pursuant to the statute, the term "exploit" "means to manipulate a victim for selfish or unethical purposes," M.C.L. § 777.40(3)(b), and the term "vulnerability" "means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation."  M.C.L. § 777.40(3)(c).  But the mere existence of a factor described in the statute "does not automatically equate with victim vulnerability."  M.C.L. § 777.40 (2).

Petitioner maintains that there was no evidence of manipulation or any other factor besides age and, therefore, he should not have received any points for offense variable 10.  The trial court, however, correctly noted that the victim's age made her vulnerable and that Petitioner's conduct was selfish, See 8/11/14 Mot. Hr'g Tr. at 4-5. The trial court also stated that, in addition to the victim's age, she was vulnerable

9

because she was alone, she was pushing a shopping cart, she was distracted, and she was robbed away from the exit to the supermarket. See 10/23/14 Evidentiary Hr'g Tr. at 14-15. Based on the Court's review, the trial court did not rely on materially false information when it scored 10 points for offense variable 10. Habeas relief is not warranted.

### 3. Offense Variable 13

In the heading for his first claim, Petitioner also states that the trial court incorrectly scored offense variable 13, which is a "continuing pattern of criminal behavior." M.C.L. § 777.43(1). However, the prosecution conceded during post-sentence proceedings that the score for offense variable 13 should be zero, and the trial court agreed. See 8/11/14 Motion Hr'g Tr. at 3. Furthermore, Petitioner has not presented any argument in his brief to support his claim. Under these circumstances, Petitioner has abandoned his challenge to offense variable 13.

### 4. Trial Counsel

Petitioner also says that trial counsel was ineffective for failing to object to the scoring of offense variables 10 and 13. Trial counsel did object to the initial score of 15 points for offense variable 10. See 12/16/13 Sentence Tr. at 9-15. Although he did not object when the trial court reduced the score to 10 points, id. at 15, as explained above the facts justified a score of 10 points. Further, as to offense variable 13, the trial court, prosecutor, and Petitioner's post-conviction attorney ultimately agreed during the post-sentence proceedings that no points should be scored for offense variable 13. Therefore, any deficiency in trial counsel's performance did not prejudice Petitioner.

## B. Judicial Fact-Finding

In his second and final claim, Petitioner contends that the trial court engaged in judicial fact-finding by relying on its own interpretation of the law when scoring offense variables 3 and 10. According to Petitioner, the trial court's description of the victim's injuries as permanent and incapacitating were speculative determinations based on the court's personal thoughts, feelings and understanding of the situation. Similarly, with regard to offense variable 10, Petitioner contends that the trial court relied on its personal thoughts, feelings, and understanding instead of using the statutory definitions of "vulnerability," "manipulation," and "exploitation." Petitioner concludes that the trial court's scoring of the sentencing guidelines increased the floor of the permissible sentence and was not supported by a preponderance of the evidence, as required by Apprendi v. New Jersey, 530 U.S. 466 (2000).

### 1. Clearly Established Federal Law

The Sixth Circuit Court of Appeals recently explained that, "[b]y operation of the Sixth Amendment, '[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.' " Robinson v. Woods, 901 F.3d 710, 715 (6th Cir. 2018) (quoting Apprendi, 530 U.S. at 490), cert. denied, 139 S. Ct. 1264 (2019). "This rule applies equally to the states through the Due Process Clause of the Fourteenth Amendment." Id. So "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490.

The Supreme Court applied Apprendi to state sentencing guidelines in Blakely v. Washington, 542 U.S. 296, 303 (2004), "and explained that . . . 'the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' " United States v. West, 392 F.3d 450, 459–60 (D.C. Cir. 2004) (quoting Blakely, 542 U.S. at 303).

In Alleyne, the Supreme Court further expanded on Apprendi and stated:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. See [Apprendi, 530 U.S. at 483 n. 10, 490]. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

Alleyne, 570 U.S. at 103.

### 2. Application

After the Supreme Court issued its decision in Alleyne, the Michigan Supreme Court concluded in Lockridge "that Michigan's sentencing guidelines violate the Sixth Amendment rule from Apprendi, as extended by Alleyne." Lockridge, 870 N.W.2d at 519. To remedy the problem, the Michigan Supreme Court held that Michigan's sentencing guidelines are only advisory. Id. at 524. "Lockridge did not change how the guidelines ranges for minimum sentences were computed; the only change was that they were no longer binding on the sentencing judge." Reign v. Gidley, 929 F.3d 777, 779 (6th Cir. 2019). The "[f]ailure to submit a sentencing factor to the jury, [moreover], is not structural error," Washington v. Recuenco, 548 U.S. 212, 222 (2006), and this

12

Court is not required to decide whether an error occurred under Alleyne if the error was harmless. United States v. Soto, 794 F.3d 635, 664 (6th Cir. 2015).

The Michigan Supreme Court remanded Petitioner's case to the state trial court for a determination of whether the court would have imposed a materially different sentence under the sentencing procedure described in Lockridge. The state supreme court ordered the trial court to follow the procedure described in Part VI of its opinion in Lockridge and then stated:

> If the trial court determines that it would have imposed the same sentence absent the unconstitutional constraint on its discretion, it may reaffirm the original sentence. If, however, the trial court determines that it would not have imposed the same sentence absent the unconstitutional constraint on its discretion, it shall resentence the defendant.

Stocks, 870 N.W.2d at 720.

On remand, the trial court reconsidered Petitioner's sentence and concluded that it would not have imposed a materially different sentence but for the constitutional error identified in Lockridge. The use of advisory guidelines that recommend, rather than require, the selection of particular sentences in response to differing sets of facts do not implicate the Sixth Amendment. United States v. Booker, 543 U.S. 220, 233 (2005). Therefore, the state trial court did not violate Alleyne on remand when the state sentencing guidelines were no longer mandatory, and any improper judicial fact-finding at the original sentencing was harmless. As such, Petitioner is not entitled to relief on this claim. See Orrick v. Macauley, No. 19-1240, 2019 WL 2454856, at *3 (6th Cir. May 8, 2019) (affirming the district court's finding that the petitioner's claim under Alleyne

was harmless, because the state trial court said that it would have imposed the same sentence whether the guidelines were mandatory or advisory).

## V. Conclusion

For the reasons stated above, the state-court decisions were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determination of the facts. The state-court decisions also were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly, the petition is DENIED.

Further, because jurists of reason would not debate the Court's decision, a certificate of appealability is DENIED. See 28 U.S.C. § 2253(c)(1)(A); (c)(2); Fed. R. App. P. 22(b)(1).

SO ORDERED.

                                            s/Avern Cohn
                                             AVERN COHN
                                             UNITED STATES DISTRICT JUDGE

Dated: 10/16/2019
      Detroit, Michigan